IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KENDRICK DEWAYNE STEWART, § | |
|    TDCJ-CID NO.1131919, § | |
|        Petitioner, § | |
| § | |
| v. § | CIVIL ACTION NO. H-05-3551 |
| § | |
| NATHANIEL QUARTERMAN,[1] Director § | |
| of the Texas Department of Criminal § | |
| Justice - Criminal Institutions Division, § | |
|        Respondent. § | |

OPINION ON DISMISSAL

Petitioner Kendrick Dewayne Stewart, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2002 conviction for capital murder in the 184th Criminal District Court of Harris County, Texas, in cause number 902192. (Docket Entry No.6). Respondent has filed a motion for summary judgment (Docket Entry No.10), to which petitioner has filed a response. (Docket Entry No.13). After considering all pleadings and the entire record, the Court will grant respondent's motion for summary judgment and deny petitioner federal habeas relief.

I. BACKGROUND AND PROCEDURAL HISTORY

A Harris County grand jury charged petitioner with intentionally causing the death of James Pienta during the course of committing and attempting to commit retaliation, by shooting Pienta with a deadly weapon, namely, a firearm. (Docket Entry No.7, Part 2, page 14). Petitioner entered a plea

---

[1] Petitioner named Douglas Dretke, Director of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), as respondent. On June 1, 2006, Nathaniel Quarterman succeeded Dretke as Director; therefore, the Court ORDERS the Clerk to substitute Nathaniel Quarterman as respondent in this case.

of not guilty to the charge. (Docket Entry No.1). A jury heard the following evidence as summarized by the First Court of Appeals for the State of Texas in its opinion affirming the state district court's judgment:

> Apartment C had been vacant for about five days, and had been vandalized by unknown persons a few days before August 10, 2001, causing damage to the doors, kitchen appliances, window, and upstairs area of the apartment. The owner of the apartment building, Joseph Martin, reported the vandalism to the Houston Police Department and contacted James Pienta, a maintenance man who had previously done work for Martin, to inspect the apartment and provide an estimated cost for repairs. The next day, Pienta and Martin met at Martin's home and drove to the vandalized apartment in separate vehicles. They arrived at the apartment between 10 and 11 a.m. When Martin unlocked and opened the door to the vandalized apartment, he discovered that appellant had trespassed inside and was asleep on a mattress on the floor.
>
> Martin and Pienta woke appellant by pushing on the mattress and questioned him about his presence in the apartment and his knowledge of the vandalism. Appellant said that he had entered the apartment by jumping the fence and that he was spending the night in the apartment. He also claimed that he knew who had vandalized the apartment. When Martin asked appellant for identification, he denied having any. After Martin told appellant, "we better take your ID, otherwise you are in trouble," appellant retrieved his Texas identification card from his shoes and gave it to Martin. Martin then told appellant and Pienta, "Let me make a call. I want to tell the police somebody inside the building [sic]," and said that he would return. Martin left Pienta alone in the apartment with appellant.
>
> Martin went to apartment B, received permission to use the phone from 13-year-old Kenneth Kinmon, and telephoned 911 to request police assistance. While Martin was still upstairs using Kinmon's telephone, Kinmon saw appellant walking from apartment C carrying a duffle bag. Appellant's face appeared angry. Kinmon asked appellant why he was mad, and appellant said, "I shot somebody." Appellant changed his clothes by putting on different shorts and gave Kinmon the duffle bag, with instructions to take the bag to Kinmon's apartment.
>
> As Martin was leaving Kinmon's apartment after using the telephone, Martin saw appellant run in the opposite direction from the vacant apartment. Martin recognized appellant's bag because he had seen it inside the vandalized apartment earlier that day and took it from Kinmon, stating that he would give the duffle bag back to appellant.
>
> On returning to the vandalized apartment and opening the door, Martin discovered Pienta lying on the floor in a pool of blood. Martin dropped the duffle bag and ran back to apartment B to telephone 911. After placing that call, Martin and a group of people began to return to apartment C, where they encountered appellant outside the

> apartments. Appellant was walking away from the apartments and stared at Martin when they saw each other. Martin returned to apartment C to await the police.
>
> When appellant left apartment C after the shooting, he spoke to several of his friends who lived nearby and told them that a police officer had been shot. Friends of appellant saw him in possession of Pienta's wallet and keys. Appellant paid a "crackhead" nine dollars to bring Pienta's van from where it was parked near apartment C to Gerale Broussard's house, where appellant went after the shooting. Later that day, police officers discovered that Pienta's van had been burned through arson. Appellant was arrested the same day as the murder after he sought treatment for burns to his body at a hospital, where he appeared, emitting an odor of gasoline. After his arrest, appellant gave a tape-recorded statement to D.S. Null, a peace officer assigned to the homicide division of the Houston Police Department. In that statement, appellant claimed that another individual, Brian Scott, had killed Pienta.
>
> The autopsy established that Pienta was killed by a single gunshot wound to the head above the left eye by a firearm that was a greater distance than one and a half to two feet away from Pienta's body. The blood splatter evidence established that Pienta was standing about three feet away from the front door of the apartment when he was shot.

*Stewart v. State*, 137 S.W.3d 184, 185-186 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd).

A jury found petitioner guilty as charged in the indictment and further found that he had used a deadly weapon during the commission of the offense. (Docket Entry No.7, Part 2, page 19). The state district court assessed punishment at confinement for life in the TDCJ-CID. (*Id.*). On direct appeal, petitioner challenged the legal and factual sufficiency of the evidence to support his conviction. *Stewart*, 137 S.W.3d at 185. Specifically, petitioner challenged whether the State proved that complainant's "murder occurred 'in retaliation for or on account of the service or status' of Pienta as both a prospective reporter and prospective witness regarding appellant's trespass into the apartment." *Id.* at 188. The state intermediate appellate court affirmed the state district court's judgment and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Docket Entry No.7, Part 2, page 23).

Petitioner sought state habeas relief on the following grounds:

3

1. He was denied the effective assistance of counsel because his trial counsel did not interview potential witnesses, even though the court appointed investigator could not locate the witnesses, and because his trial counsel did not visit him in jail to go over statements of State's witnesses and to prepare for trial.

2. The evidence was insufficient to support his conviction and the State used misleading testimony to improperly introduce physical evidence, specifically: (a) inconsistent testimony regarding petitioner's suitcase; (b) unsupported testimony that petitioner entered the vacant apartment through a broken window even though his fingerprints were not found on the window glass; and (c) unsupported testimony that the shorts found in a ditch belonged to him.

3. The testimony of various witnesses was coached or coerced. Specifically, Ursella Anderson's testimony about the time she first saw petitioner on the day of the murder was coached or coerced because it conflicted with the testimony of witness Joseph Martin. Likewise, Ursella's testimony at trial was not consistent with her initial statement to police. Billy and Kevin Anderson's testimonies were inconsistent and Gerale Brossard's initial statement to police was inconsistent with his trial testimony, which was given after the police threatened to take him to jail for stealing a van.

4. The State mis-characterized petitioner's motive for killing complainant as retaliatory. Specifically, the State claimed that complainant would have been a witness in another felony crime but petitioner did not commit another felony; if anything, petitioner committed a Class A misdemeanor by sleeping in the vacant apartment. Therefore, the evidence was insufficient to support his conviction.

(Docket Entry No.7, Part 1, pages 6-22; *Ex parte Stewart*, Application No. WR-61-686-01). Petitioner also checked on his state habeas application that he sought state habeas relief on the ground that his conviction was obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant but he did not state any facts to support this ground. The state habeas court entered findings of facts and conclusions of law, recommending that state habeas relief be denied. (*Id.*, pages 31-33). The Texas Court of Criminal Appeals denied the state habeas application without written order on the findings of the trial court without a hearing. (*Id.*, page 3).

Petitioner seeks federal habeas relief on the following grounds:

1. Petitioner was denied the effective assistance of counsel;

2. The evidence was insufficient to support his conviction; and,

3. The testimony of several witnesses was coached or coerced.

(Docket Entry No.6). Petitioner also checked on the habeas application form that he sought relief on the ground that his conviction was obtained by the prosecution's failure to tell the defendant about evidence favorable to the defendant but he did not brief the issue. (*Id.*). Months after respondent filed his motion for summary judgment noting that petitioner had not briefed the issue and therefore, waived the issue, petitioner filed a motion to amend his petition to brief the ground. (Docket Entry No.12). Petitioner did not attach the proposed amendment or supplement to his motion. Instead, in his response to the motion for summary judgment filed the same day, petitioner stated that he did not brief the issue because there was no room on the section 2254 form to brief a fifth issue. (Docket Entry No.13). In light of petitioner's timing and his failure to attach a proposed amendment or supplement, and petitioner's obvious willingness to attach additional pages to his habeas petition to brief other issues more fully, the Court will deny petitioner's motion to brief this ground in an amended or supplemental petition.

Respondent has filed a motion for summary judgment seeking dismissal of the petition on the grounds that the Court is procedurally barred from considering some of petitioner's grounds for relief and petitioner has not met his burden of proof under 28 U.S.C. § 2254(d) that would entitle him to federal habeas relief. (Docket Entry No.21).

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, a federal habeas petition on behalf of a person in custody pursuant to a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28

U.S.C. § 2254(d)(1),(2); *Williams v. Taylor*, 529 U.S. 362, 411-13 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Absent a direct conflict with a Supreme Court decision, a federal district court may grant the writ "only if the state court 'unreasonably applies [clearly established federal law, as determined by the Supreme Court] to the facts of the prisoner's case, . . . [or makes] an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.' The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Findings of fact made by state courts are presumed correct on federal habeas review and petitioner bears the burden to rebut the findings with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the

7

notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### III. ANALYSIS

Respondent moves for summary judgment on the ground that the Court is procedurally barred from considering petitioner's claims. (Docket Entry No.10).

On habeas review, a federal court may not consider a state inmate's claim if the state court based its rejection of that claim on an independent and adequate state ground. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996). To prohibit "collateral review, the state court must have expressly relied on the procedural bar as the basis for disposing of the case." *Bledsue*, 188 F.3d at 256. A federal court, however, may review procedurally barred claims if the inmate "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).

"[T]he existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman,* 501 U.S. at 753. "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997). Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000).

8

"The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard." *United States v. Sorrells*, 145 F.3d 744, 749 n. 3 (5th Cir. 1998). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *United States v. Torres*, 163 F.3d 909, 912 (5th Cir. 1999). To establish actual innocence, "the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). "Examples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Id.*

### A. Ineffective Assistance of Counsel

Respondent contends that petitioner's ineffective assistance of counsel claim is procedurally barred for two reasons. First, respondent maintains that petitioner did not present the factual allegations underlying his claim of ineffective assistance, which he alleged in the pending petition, to the Texas Court of Criminal Appeals in his state habeas application; therefore, he has failed to exhaust his ineffective-assistance-of-counsel claim and is now procedurally barred from raising these allegations under the Texas successive writ statute. (Docket Entry No.10). Respondent acknowledges that in the state application and the pending petition, petitioner complains that his trial counsel was ineffective for failing to find, interview, or call certain witnesses. Nevertheless, respondent maintains that, unlike the pending petition, petitioner did not allege in his state habeas application that he provided his trial counsel and the court-appointed investigator with the address of each witness and the school each attended. (*Id.*). Respondent also claims that petitioner did not allege in his state habeas application that no action was taken after he provided such information;

9

instead, he alleges in the state application that the investigator was unable to locate the witnesses. (*Id.*). Respondent further maintains that while petitioner alleged in his state habeas application that the witnesses were mentioned by the State's witnesses in relation to the events about which they testified, he did not specify, as he does in the pending petition, "to what testimony of the State's witnesses he referred." (*Id.*, page 8). Finally, respondent maintains that petitioner fails to state in his state habeas application to what each witness would have testified, or how such testimony would have helped his case, as he does in the pending petition. (*Id.*). Respondent argues to the extent that petitioner relies on these new factual allegations, which were not fairly presented to the Texas Court of Criminal Appeals in his state application, to support his ineffective-assistance-of-counsel claim in the pending petition, his ineffective-assistance claim is unexhausted and procedurally barred. (*Id*.). Petitioner does not deny that he provided more factual details to support his ineffective assistance of counsel claim in the pending federal petition than his state habeas application. (Docket Entry No.13). Petitioner claims that because he is proceeding *pro-se*, the state courts should have held a hearing to ascertain the facts underlying his claim of ineffective assistance. He complains that respondent is holding him to a more stringent standard than formal pleadings drafted by lawyers and that if the Court would subject his claims to the *Haines v. Kerner* ruling, "it would be more than obvious that the petitioner not only met but exceeded his burden of proof under section 2254(d)(1) of the AEDPA." (Docket Entry No.13, page 6). Petitioner maintains that the Texas Court of Criminal Appeals refused to directly address his claim and did not consider its merits; instead, the Texas Court rubber-stamped the state district court's ruling. (*Id.*, pages 6-8). Petitioner seeks an evidentiary hearing in federal court to argue and amend his claim. (*Id.*, page 8). He indicates that to fulfill the requirements of showing what an investigation would have revealed and what these

witnesses would have attested if given the opportunity, he would require counsel to be appointed. (*Id.*, pages 8-9).

Under 28 U.S.C. § 2254, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). The doctrine of exhaustion, codified as amended at 28 U.S.C. § 2254(b)(1) and (c), reflects a policy of federal/state comity. *Coleman*, 501 U.S. at 731-32. Those statutes provide in pertinent part as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> \* \* \* \*
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254 (b) – (c). Under this framework, exhaustion means that the petitioner must have presented all of his habeas corpus claims fairly to the state's highest court before he may bring them to federal court. *See Castille v. Peoples*, 489 U.S. 346 (1989); *Fisher v. State*, 169 F.3d 295, 302 (5th Cir. 1999); *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). This requirement is not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition. *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003). In this case, petitioner concedes that he presented new factual claims in the pending federal petition, which he failed to present in his state

11

habeas application. Therefore, petitioner failed to exhaust his ineffective-assistance-of-counsel claim before filing the present habeas petition.

Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed, allowing the petitioner to return to the state forum to present his unexhausted claims. *Rose v. Lundy*, 455 U.S. 509 (1982). Respondent, however, contends such a result in this case would be futile because petitioner's unexhausted claims would be procedurally barred as an abuse of the writ under Texas law. (Docket Entry No.10).

Texas prohibits successive writs challenging the same conviction except in narrow circumstances. TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a) (Vernon 2005). The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

*Id.* The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Neither petitioner's federal habeas petition nor his response to the motion for summary judgment contain specific facts to establish that these claims could not have been raised in his state habeas petition or that he is innocent. Therefore, petitioner's unexhausted claim does not fit within the exceptions to the successive writ statute and would be procedurally defaulted in state court. *Coleman*, 501 U.S. at 735 n.1.

Petitioner's claim of ineffective assistance of counsel is also procedurally barred in federal court. A procedural bar for federal habeas review occurs if the court, to which a petitioner must present his claims to satisfy the exhaustion requirement, finds the unexhausted claim procedurally barred in state court. *Coleman,* 501 U.S. at 735 n.1 (holding State need not explicitly apply procedural bar "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"). Such a bar precludes this Court from reviewing petitioner's claim absent a showing of cause for the default and actual prejudice attributable to the default. *Id.* at 750.

Petitioner has been given notice through respondent's motion for summary judgment that the Court would consider a dismissal of his claim under the procedural default doctrine and has been given an opportunity to respond with any argument he may have opposing dismissal in a response to the motion for summary judgment. *See Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998). Petitioner, however, fails to address the default, the cause of the default, or prejudice resulting from the default in his response to the motion for summary judgment. (Docket Entry No.13). Accordingly, the Court will dismiss petitioner's claim that he was denied the effective assistance of counsel as procedurally barred.

### B. Sufficiency of Evidence to Support the Conviction

Petitioner challenged the sufficiency of the evidence on direct appeal and in his state habeas application. On appeal, petitioner challenged the retaliation element of the capital murder offense "that required the State to prove that the murder occurred 'in retaliation for or on account of the service or status' of Pienta as both a prospective reporter and prospective witness regarding appellant's trespass into the apartment." *Stewart v. State*, 137 S.W.3d 184, 188 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd). Petitioner argued the evidence was insufficient to support his conviction

13

for capital murder because there were other possible reasons why he killed Pienta, other than retaliation for or on account of Pienta's status or service as a prospective reporter or witness, such as petitioner's need to escape from the apartment, his desire to steal Pienta's wallet and van, or that he was just mean. *Id.* The state appellate court rejected petitioner's arguments and found that because Pienta witnessed petitioner's trespass, Pienta was a prospective witness who might have been called to testify in any future criminal proceedings against petitioner. *Id.* at 190.

In his state habeas application, petitioner maintains there was a lack of evidence to support his conviction because the State used misleading testimony to improperly introduce physical evidence, specifically: (a) inconsistent testimony regarding the location of petitioner's suitcase was used to admit a photograph of a suitcase; (b) unsupported testimony that petitioner entered the vacant apartment through a broken window even though his fingerprints were not found on the window glass; and (c) unsupported testimony that the shorts found in a ditch belonged to petitioner. (Docket Entry No.7, Part 1, pages 13, 18-19). He also claims the evidence is insufficient to support his conviction for capital murder because the State failed to prove that he retaliated against complainant by murdering him because complainant was a potential witness to another felony offense. (*Id.*, page 22).

In the pending petition, petitioner challenges the sufficiency of the evidence to support his conviction on the same grounds that he raised in his state habeas application. (Docket Entry No.6). With respect to petitioner's claim that the State used misleading testimony to improperly introduce physical evidence, respondent moves for summary judgment on two grounds. Respondent contends that unlike the pending petition, petitioner did not state in his habeas application that none of the witnesses observed him committing the murder and therefore, were only able to testify to what petitioner had told them or what they overheard petitioner say to another witness; moreover, he did

not allege a conflict in testimony regarding the description of the suitcase introduced as Exhibit 17 at trial. (Docket Entry No.10). The record supports respondent's contention. Accordingly, for reasons previously discussed, these claims are unexhausted and procedurally barred by State successive writ law.

Respondent also contends that petitioner's lack-of-evidence claim was denied by the last state court to consider the claim on a state procedural bar. (*Id.*, pages 15-16). The state habeas court found that petitioner's allegation that the State used misleading testimony to improperly introduce physical evidence is a record claim, and was procedurally barred because it could have been raised on direct appeal. (Docket Entry No.7, Part 1, page 32). The state habeas court also found that his challenge to sufficiency of the physical evidence was not cognizable in post-conviction habeas proceedings. (*Id.*).

Respondent further contends that petitioner's sufficiency challenge to the element of retaliation is procedurally defaulted and should be denied. (Docket Entry No.10, page 20). In his state habeas application and the pending petition, petitioner maintains the retaliation element of the capital murder statute, under which he was convicted, requires that a complainant be a prospective witness to another felony offense, and not a misdemeanor offense. (Docket Entries No. 7-1, No.6). Petitioner maintains the evidence showed that he would have only been charged, if at all, with a Class A misdemeanor for trespassing in the vacant apartment; therefore, complainant Pienta would not have been a potential witness to a felony offense against him. (*Id.*). Petitioner claims because the State failed to prove that Pienta would have been a potential witness to a felony offense, it failed to prove the retaliation element of the capital murder statute. (*Id.*). Therefore, he contends, the evidence admitted at trial was insufficient to support his conviction for capital murder. (*Id.*).

The state habeas court acknowledged that petitioner's claim that the State improperly characterized his motive to commit murder as retaliatory was rejected on direct appeal; it also found that petitioner's habeas challenge to the sufficiency of the State's evidence of the element of retaliation was not cognizable in post-conviction habeas proceedings. (Docket Entry No.7, Part 1, page 33). The state habeas court further found that petitioner could not use habeas to raise issues that have been previously rejected on direct appeal. (*Id.*, page 32).

Under Texas law, "[w]hen a defendant has an adequate remedy at law for his claim, he may not raise the claim in an application for writ of habeas corpus." *Ex parte Townsend*, 137 S.W.3d 79, 82 (Tex. Crim. App. 2004). Furthermore, a challenge to the sufficiency of the evidence can only be raised on direct appeal, not in a state habeas corpus proceeding. *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994). Such a claim is not cognizable in a post-conviction, collateral attack. *West*, 92 F.3d at 1398 n. 18; *McLain*, 869 S.W.2d at 350. Moreover, Texas laws precludes a state habeas court from revisiting any issue that was raised and rejected on direct appeal. *See e.g. Acosta v. State*, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984).

Federal review of a claim . . . is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-04 (1991); *Coleman*, 501 U.S. at 729. Here, the state habeas court found that petitioner was procedurally barred under state law from raising an insufficiency challenge in his habeas application, that he could have and should have raised his insufficiency claims on direct appeal, and that the state habeas court was precluded from re-visiting the insufficiency challenge because the Texas courts had addressed his insufficiency challenge, albeit on different grounds, on direct appeal. The Texas Court of Criminal Appeals explicitly adopted the state habeas court's findings of procedural default when

16

it denied petitioner's state application for a writ of habeas corpus without written order on the findings of the trial court. *See Ylst*, 501 U.S. at 803. Because the State court relied on independent state procedural grounds in denying petitioner's insufficiency claims in his state habeas application, this Court is barred from reviewing petitioner's claims that the evidence was lacking or insufficient to support his conviction absent a showing of cause or prejudice or miscarriage of justice.

Petitioner makes no attempt to demonstrate cause or prejudice for failing to exhaust his state remedies or for failing to address the lack of evidence claims on direct appeal. However, in his response to the motion for summary judgment, petitioner contends that he is actually innocent of the offense. (Docket Entry No.13). He fails, however, to provide any new or reliable evidence giving rise to a finding of actual innocence. Therefore, he is not entitled to have his otherwise barred constitutional claims considered on the merits on the "actual innocence" or "miscarriage of justice" exception.

Accordingly, petitioner's challenges to the sufficiency of the evidence are denied.

### C. Coerced Statements

Petitioner contends that his conviction was obtained using coerced or coached witness testimony. (Docket Entry No.6). Specifically, he claims the following is evidence that Ursela Anderson's testimony was coached: (a) her testimony about when she heard petitioner talking to her brother and throwing rocks at her window conflicts with the testimony of Joseph Martin about when he arrived at the apartment and when the murder took place and also conflicts with her brother Kenneth's testimony; and, (b) Ursella did not tell police on the day of the murder that she heard petitioner say that petitioner shot anyone as she testified at trial. (*Id.*). Petitioner further claims that the testimonies of Billy and Kevin Anderson were coached or coerced because their testimonies conflict with respect to when they left their apartment and whether police and emergency vehicles

were present when they left the apartment. Petitioner also claims that Billy's and Kevin's testimonies conflict with respect to the location where petitioner allegedly told Kevin that someone was shot. (*Id.*). Next, petitioner claims that the testimonies of Gerale Brossard and Kevin Anderson were coached or coerced because Brossard indicated that petitioner pulled a gun from a suitcase while Anderson testified that petitioner pulled the gun from his waistband. (*Id.*). Finally, petitioner maintains that the testimony of Gerale Brossard was coerced because Brossard did not give a statement to police until the police threatened to take him to jail for stealing a van. (*Id.*).

The state habeas court found that petitioner's "allegation that his conviction was obtained through the use of a coerced confession is a record claim, and there is no reason why the Applicant could not have raised these issues on direct appeal; therefore, the Applicant's instant claims are procedurally barred." (Docket Entry No.7, Part 1, page 32). The state habeas court also found that petitioner failed to allege sufficient facts which, if true, would entitle him to habeas relief on his claim that he was convicted on a coerced confession. (*Id.*). The state habeas court further found that petitioner offered only conclusory allegations that his conviction was obtained through the use of a coerced confession and therefore, did not warrant habeas relief. (*Id.*).

As previously stated, Texas law provides that "[w]hen a defendant has an adequate remedy at law for his claim, he may not raise the claim in an application for writ of habeas corpus." *Ex parte Townsend*, 137 S.W.3d at 82. Because the state habeas court rejected this claim for procedural reasons, petitioner's coerced statement claims are barred from federal habeas corpus review by the doctrine of procedural default.

Petitioner states that with an evidentiary hearing, he can show both cause, prejudice, and a fundamental miscarriage of justice, but he makes no effort to show either cause and prejudice or

actual innocence in his response. (Docket Entry No.13, page 10). Accordingly, petitioner's claim of conviction by coerced testimony will be denied as procedurally barred.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing that rational jurists would find the Court's procedural rulings debatable. Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding, the Court ORDERS the following:

1. Respondent's motion for summary judgment (Docket Entry No.10) is GRANTED.

2. Petitioner's habeas claims are DENIED and his petition is DISMISSED, with prejudice.

3. Petitioner's request for an evidentiary hearing and for the appointment of counsel (Docket Entry No.13) are DENIED.

4. A certificate of appealability is DENIED.

The Clerk will provide a copy to the parties.

Signed at Houston, Texas, on this 16th day of October, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE